UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF GEORGIA

SAVANNAH DIVISION

BEVERLY FRANCIS,                  )
                                  )
    Plaintiff,                    )
                                  )
v.                                )         Case No. CV412-300
                                  )
RIVERVIEW HEALTH AND              )
REHABILITATION CENTER,            )
                                  )
    Defendant.                    )

## REPORT AND RECOMMENDATION

Beverly Francis, acting *pro se*, claims that she was fired from her nursing job at Riverview Health and Rehabilitation Center ("Riverview") based upon her race in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq.*[1] (Doc. 1.) Presently before

---

[1] In Francis' amended complaint, she asserts that her termination was also improper under the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621, *et seq.* (Doc. 4.) Not only has she utterly failed to support a *prima facie* case of age discrimination (doc. 19-5 at 10 (Francis' deposition admitting that she has no evidence of age discrimination)), she did not present it before the EEOC. (Doc. 19-7 at 22 (EEOC charge of discrimination).) The ADEA requires a plaintiff to exhaust all available administrative remedies prior to filing a lawsuit. 29 U.S.C. § 626(d)(2); *Bost v. Fed. Express Corp.*, 372 F.3d 1233, 1238 (11th Cir. 2004) (explaining ADEA requirement). Because her ADEA claim is a "new act of discrimination" not

the Court is defendant's motion for summary judgment. (Doc. 19.) For the following reasons, the summary judgment motion should be granted and this case should be dismissed.

Under Fed. R. Civ. P. 56(a), the Court must grant summary judgment where the movant "shows that there is no genuine dispute as to any material fact and [it] is entitled to judgment as a matter of law." *Id.* A genuine dispute as to a material fact can only be found "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quotation omitted). The movant meets this burden by presenting evidence showing there is no disputed material fact, or by showing the non-moving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at

---

exhausted in her administrative charge, Francis was barred from raising the claim in her complaint, and it must therefore be denied. *Giles v. BellSouth Telecomm., Inc.*, 542 F. App'x 756, 759 (11th Cir. 2013).

322-23; *see also* Fed. R. Civ. P. 56(c)(1). After the movant satisfies this requirement, the burden shifts to "the adverse party [who] must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250 (quotation omitted). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Id*. at 247-48 (emphasis in original). The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). And "[a]ll reasonable inferences arising from the undisputed facts should be made in favor of the nonmovant, but an inference based on speculation and conjecture is not reasonable." *Blackston v. Shook & Fletcher Insulation Co.*, 764 F.2d 1480, 1482 (11th Cir. 1985) (citation omitted).

The basic facts here are not in dispute, since Francis has failed to offer any admissible evidence contravening defendant's showing.[2]

---

[2] Francis failed to accompany her response with a statement of material facts, in violation of Local Rule 56.1. Under that provision, every supported statement made by the moving party is deemed admitted unless specifically controverted by a statement served by the opposing party. S.D. Ga. LR 56.1. While Francis has recounted a slightly different factual scenario in response to defendant's motion for

3

Francis held several different nursing positions at Riverview starting in February 1995. (Doc. 1 at 3-4 (complaint).) In 2009, she was promoted to unit manager. (Doc. 19-8 at 1 (Kinney aff.).) On October 13, 2011, Francis and another nurse, Natalie Brown (African-American), lost their composure at a "nursing in-service meeting" when discussing duty assignments. (Doc. 19-9 at 1 (Jones-Thomas decl.); doc. 19-10 (Shellman decl.).) Sharon Jones-Thomas (Caucasian), the Director of Nursing, terminated the meeting and called Brown into her office. (Doc. 19-9 at 1; doc. 19-10 at 1.) Francis followed, despite the fact that her presence had not been requested. (Doc. 19-9 at 1; doc. 19-10 at 1.) During the private meeting, which also included Assistant Director of Nursing Pamela Shellman (African-American), Francis "was mumbling under her breath

---

summary judgment, her factual narrative is entirely unsworn and contains no citations to admissible evidence. (Doc. 23.)

    The undersigned explicitly warned Francis that she was required to comply with Local Rule 56.1 and that she therefore *must* file opposing affidavits or other admissible evidence should she wish to contest a defendant's evidentially supported summary judgment motion. (Doc. 5 (order of instructions).) She failed to do so. The only evidence she has tendered is a few pages of unauthenticated grievance forms and letters to defendant's administrators, which she failed to cite to or explain in her summary judgment response. (Doc. 23 at 3-7.) Despite her *pro se* status, the Court is empowered to deem defendant's facts as admitted. *E.g., Smith v. Mercer*, 2014 WL 3398353 at *2 (11th Cir. July 14, 2014). Nevertheless, the Court is still required to "review the movant's citations to the record to determine if there is, indeed, no genuine issue of material fact, before granting summary judgment." *Id.* (quotations and citations omitted).

and was clearly agitated." (Doc. 19-9 at 1.) Brown was asked to leave the office. (Doc. 19-10 at 1.) Francis began yelling, flailing her arms about, and knocked a pot of flowers off Shellman's desk.[3] (*Id.*) After allowing Francis to "cool off," Jones-Thomas pointed out that Francis was behaving in an unprofessional manner and that, as a supervisor, Francis was expected to "set an example for other employees," not to "incite the employees and ignite arguments." (Doc. 19-9 at 2.) Francis, with an angry countenance, leaned forward and accused Jones-Thomas of "picking on her." (*Id.*) Jones-Thomas determined that Francis was behaving in an insubordinate manner and decided to terminate her employment.[4] (*Id.*) Shellman agreed with the Director's "termination

---

[3] Francis stated in her deposition that she "did not specifically knock no flower" onto the ground. (Doc. 19-5 at 2.) She states it was an accident, since she is "kind of a big girl" and her "hip probably hit it." (*Id.*) She does not, however, state that it was so clearly an accident that it would have been unreasonable for Jones-Thomas and Shellman to perceive it as an intentional act. She also insisted that she never raised her voice, but she admitted that she attempted to leave the meeting because she was feeling quite "agitated." (Doc. 19-5 at 2-3.)

[4] In Francis' unsworn, inadmissible factual recitation, she claims that Jones-Thomas singled her out and "made some racial comments toward Mrs. Francis and other staff members." (Doc. 23 at 2.) She admitted in her deposition, however, that Jones-Thomas never made any statements directly linked to Francis' race. (Doc. 19-4 at 10.) According to Francis, the comments were far more subtle, for "the first thing [white people] want to say is black folk always got attitudes" and "dropped the ball and stuff like that." (*Id.* at 8, 9.) While it is possible that work-related managerial criticism from a non-black manager to a black person in a subordinate role might be dripping with racial overtones, Francis' deposition suggests that she believes that such criticism is *necessarily* racist; workplace criticism relating to "dropping the ball"

5

decision and agreed that Ms. Francis had acted in an insubordinate manner." (Doc. 19-10 at 2.)

Since Francis has not alleged any direct or statistical evidence of discrimination, she must rely upon circumstantial evidence from which an inference of intentional discrimination may be drawn. *E.g., Armstrong v. Flowers Hosp., Inc.*, 33 F.3d 1308, 1313 (11th Cir. 1994). Where the plaintiff relies on circumstantial evidence, the court employs the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). To establish a *prima facie* case of discrimination the plaintiff must first show: that (1) she is a member of a protected class; (2) she was subjected to an adverse employment action; (3) her employer treated similarly situated employees outside of her protected class more favorably than she was treated; and (4) the employment action was causally related to the protected status. *See McDonnell Douglas Corp.*, 411 U.S. 792, 802-04 (1973); *Burke-Fowler v. Orange County, Fla.*, 447

---

or "attitude problems" are "certain slangs that they [(white people)] use that indicate racial slangs." (*Id.* at 9.) In her summary judgment response, she attached a letter to Riverview reiterating that she was "stigmatize[d] based on comments verbalized to me during a meeting (i.e. 'attitude problem' 'you dropped the ball'). The aforementioned 'slangs' are typical of non-Blacks (African-Americans) in the work place to label and use as an intimidations [sic] technique to Blacks (African-Americans) in the workplace, thereby creating a hostile environment with harassment tendencies which causes adverse effects on employees who [sic] sole profession is to aid in sustaining and prolonging life." (Doc. 23 at 7.)

F.3d 1319, 1323 (11th Cir. 2006) (same); *Alford v. Florida*, 390 F. Supp. 2d 1236, 1247 (S.D. Fla. 2005) (same).

Defendant only challenges Francis' proof as to the third prong: whether other employees outside of her protected class were treated more favorably than she was treated.[5] (Doc. 19-1 at 5-6.) In her summary judgment response, Francis simply states that it is her "belief . . . that nurses of a race other than a Black American were given passes for their improper and harmful behavior while many black nurses were not afforded the same rights." (Doc. 23 at 2.) Her unsupported, unsworn belief in the existence of comparators is inadequate to survive summary judgment. When asked about the existence of comparators during her deposition, she admitted that she only knew of one other case of insubordination, but it was by an African American named Tamika Lemon who was not terminated for the incident. (Doc. 19-5 at 17-18, 20.)

---

[5] To be an adequate "comparator," the individual outside the plaintiff's protected class must be "similarly situated in all relevant respects." *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997). That is, "we require that the quantity and quality of the comparator's misconduct be nearly identical to prevent courts from second-guessing employers' reasonable decisions and confusing apples with oranges." *Burke–Fowler v. Orange County*, 447 F.3d 1319, 1323 (11th Cir. 2006) (quotation marks and brackets omitted); *see also Nix v. WLCY Radio/Rahall Commc'ns*, 738 F.2d 1181, 1185 (11th Cir. 1984) (requiring a plaintiff alleging a discriminatory discharge claim to show "that the misconduct for which he was discharged was nearly identical to that engaged in by an employee outside the protected class whom the employer retained") (quotation marks and brackets omitted).

Since Lemon is not outside of Francis' protected class, she is an invalid comparator. *Holifield*, 115 F.3d at 1562. Moreover, there is no evidence in the record detailing the facts of Lemon's insubordinate episode or its resolution, so even if she was outside of Francis' protected class, it is impossible to say that the misconduct was "nearly identical." *Burke-Fowler*, 447 F.3d at 1323.[6]

Even if Francis had established a *prima facie* case of discrimination, defendant has proffered a legitimate, nondiscriminatory reason for her termination. (Doc. 19-1 at 8-9.) After establishing a *prima* facie case of discrimination, the burden of production shifts to the employer, who must introduce evidence of "some legitimate, nondiscriminatory reason" for its employment decision. *McDonnell Douglas*, 411 U.S. at 802. Here, Riverview asserts that Francis was insubordinate. (Doc. 19-1 at 8-9.)

Because the burden of persuasion remains with the employee,

---

[6] Defendant addresses comparators Francis listed in her EEOC paperwork. (Doc. 19-1 at 7-8; doc. 19-7 at 26-27.) As it explains, neither of the comparators outside of Francis' protected class had engaged in insubordinate behavior. (Doc. 19-1 at 7-8; doc. 19-8 at 1-2 (Kinney aff. explaining that neither Terri Love nor Lerma Pierce ever engaged in insubordinate behavior during their time at Riverview; Love performed quite well in general and was never disciplined, while Pierce was transferred to a new unit after receiving patient complaints).)

Francis must show that her termination for insubordination was pretextual -- i.e., the "proffered reason was not the true reason for the employment decision." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 508 (1993) (internal quotation marks omitted); *see also Collado v. United Parcel Serv. Co.*, 419 F.3d 1143, 1150 (11th Cir. 2005) (noting that once the employer satisfies its burden, "the presumption of discrimination that arose when the plaintiff made [her] prima facie showing 'drops from the case,' and 'the case is placed back into the traditional framework -- in other words, the plaintiff still bears the burden of proving, more probably than not, that the employer took an adverse employment action against [her] on the basis of a protected personal characteristic'" (internal citations omitted)). The evidence requirement at this stage is particularly demanding, because once an employer proffers a reason for an adverse employment action that might otherwise motivate a reasonable employer, the employee must rebut it. Merely quarreling with the wisdom of that reason does not suffice. *Chapman v. AI Transport*, 229 F.3d 1012, 1030 (11th Cir. 2000). Furthermore, an employer's legitimate, non-discriminatory reason for termination, even if based on a mistaken but reasonable belief, will not subject it to liability.

*Moore v. Sears, Roebuck & Co.*, 683 F.2d 1321, 1323 n. 4 (11th Cir. 1982); *Wigley v. R & D Maint. Servs., Inc.*, 2009 WL 2222706 at *9 (S.D. Ala. July 22, 2009) ("an employer's good faith, but incorrect, belief that an employee violated a work rule (such as abandoning his job) can constitute a nondiscriminatory reason for that employee's termination"); *Dejarnett v. Willis*, 976 F. Supp. 2d 1271, 1290-91 (M.D. Ala. Oct. 4, 2013).

Francis has not offered any admissible evidence showing that her supervisors were not under the reasonable (even if mistaken) belief that her actions amounted to insubordination. Her only argument as to pretext seems to be that Jones-Thomas and Shellman failed to follow protocol set by a memo made by Stan Adams, defendant's Executive Director, requiring that all terminations be pre-authorized by him. (Doc. 23 at 2; doc. 1 at 3-4.) Francis does not, however, contest defendant's assertion that Adams was out the office on the day she was terminated and that he later ratified the decision. (Doc. 19-1 at 11.) Nor has she submitted a copy of the policy or offered any evidence contradicting Jones-Thomas's assertion that she was unaware of that policy at the time she terminated Francis. (Doc. 19-9 at 2.) Given that Jones-

Thomas' uncontested statement that she did not know that the Adams Memo even existed, her failure to follow that protocol is hardly evidence of any discriminatory animus. Francis has failed to proffer any evidence showing that defendant's legitimate, nondiscriminatory reason for terminating her was pretextual, so her claim still fails.

For all of the reasons explained above, the defendant's motion for summary judgment (doc. 19) should be **GRANTED** and this case should be **DISMISSED**.[7]

**SO REPORTED AND RECOMMENDED** this ___26th___ day of August, 2014.

*/s/ G.R. Smith*
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA

---

[7] In order to perfect the docket, Francis' unopposed motion for extension of time to file her response to defendant's summary judgment motion (doc. 21; *see* doc. 22 (response)) is **GRANTED**.